IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

AMERICAN PEANUT SHELLERS         *
ASSOCIATION, DONALD CHASE,
and GERALD ISLER,                *

    Plaintiffs,              *

vs.                              *
                                 CASE NO. 4:06-CV-54 (CDL)
                             *
MIKE JOHANNS, in his Official
Capacity as Secretary of          *
Agriculture, UNITED STATES
DEPARTMENT OF AGRICULTURE,        *
and THE COMMODITY CREDIT
CORPORATION,                      *

    Defendants.              *

O R D E R

Plaintiffs contend that the Secretary of Agriculture is violating a provision in the Farm Security and Rural Investment Act of 2002 ("Farm Bill"), Pub. L. No. 107-171, 116 Stat. 134 (codified in scattered sections of 7 U.S.C.), that requires him to consider four specific factors in setting an alternative repayment rate for marketing assistance loans made to peanut producers. *See* 7 U.S.C. § 7957(d)(1)(B). Plaintiffs seek an injunction "restraining and enjoining . . . the Secretary of Agriculture[] and the Commodity Credit Corporation from establishing an alternative repayment rate that [1] fails to utilize Congressionally mandated factors [or] . . . [2] exceeds the international and domestic market prices such that the plaintiffs are impeded or foreclosed from marketing their peanuts

freely and competitively, both domestically and internationally[.]"¹ (Compl. ¶ 22(a)-(b).) Defendants have filed a Motion to Dismiss (Doc. 39) "on jurisdictional grounds, for lack of standing, statutory preclusion, failure to state a claim and laches."² (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 2, Feb. 23, 2007.) For the following reasons, the Court grants Defendants' Motion to Dismiss based upon a lack of Article III standing.

FACTUAL BACKGROUND

This case involves the 2002 federal loan assistance program for peanut producers. Under the program, "producers" who grow and harvest peanuts "on a farm" are eligible to receive from Defendant Commodity Credit Corporation ("CCC") a nine month "nonrecourse marketing assistance loan" in the amount of $355 per ton of peanuts. 7 U.S.C. § 7957(a)(1), (b), (c)(1). If a producer elects to obtain the loan, he or she must provide a warehouse storage receipt as collateral and CCC must pay for the "storage, handling, and other

---

¹Initially, Plaintiffs also sought "a declaratory judgment declaring invalid 7 C.F.R. § 1421.10(b)(2) on the ground that the regulation fails to conform to the mandatory requirements of the enabling statute, 7 U.S.C. § 7957(d)(1)(B)[.]" (Compl. ¶ 22(d).) However, effective June 6, 2006, this regulation has been amended to specifically identify each of the four statutory factors, and therefore this claim is now moot.

²Defendants have raised the issue of lack of jurisdiction in a Motion to Dismiss and Motion for Summary Judgment. Therefore, the parties have had an opportunity to treat this jurisdictional attack as a facial and factual one. The Court has reviewed matters outside the pleadings in deciding the issue, and accordingly has considered Defendants' challenge to jurisdiction as a factual one. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003).

2

associated costs" throughout the term of the loan.³ *Id.* at § 7957(a)(6). At the end of nine months, a producer may either forfeit the peanuts and retain the $355 per ton loan proceeds or repay the loan and recover the stored peanuts.⁴ The marketing assistance loans are subject to repayment at a rate that is the lower of either (1) the loan rate of $355, plus interest, or (2) an alternative loan repayment rate ("ALRR") established by the Secretary of Agriculture. The Farm Bill requires that the Secretary set the ALRR at

> a rate that [he or she] determines will—(i) minimize potential loan forfeitures; (ii) minimize the accumulation of stocks of peanuts by the Federal Government; (iii) minimize the cost incurred by the Federal Government in storing peanuts; and (iv) allow peanuts produced in the United States to be marketed freely and competitively, both domestically and internationally.

*Id.* at § 7957(d)(1)(B). By regulation, the Secretary has delegated to CCC the duty and responsibility of determining the ALRR. *See* 7 C.F.R. 1421.10(b)(2) ("To the extent practicable, CCC shall determine and announce periodically an [ALRR] for peanuts[.]"); *see also* 7 C.F.R. § 1421.10(b)(2) (outlining statutory factors as those to be considered in setting ALRR).

As an alternative to the marketing assistance loan program, a peanut producer may elect to collect "loan deficiency payments"

---

³The provision for payment of peanut storage costs is "[e]ffective for the 2002 through 2006 crops of peanuts." 7 U.S.C. § 7957(a)(6).

⁴A producer also has the option of repaying the loan at any time prior to the loan termination date.

3

("LDP"). *Id.* at § 7957(e)(1). The LDP amount is determined by multiplying the "payment rate" by "the quantity of peanuts produced" which are not the subject of a marketing assistance loan. *Id.* at § 7957(e)(2). Under the Farm Bill, the "payment rate" is calculated "as of the date the producers request the payment[,]" *id.* at § 7957(e)(4)(A), and is equal to "the amount by which—(A) the [$355 per ton] loan rate . . . exceeds (B) the rate at which the [marketing assistance] loan may be repaid . . . ." *Id.* at § 7957(e)(3). Accordingly, the ALRR affects both the marketing assistance loan and the LDP programs.

Plaintiffs are the American Peanut Shellers Association ("APSA") and two peanut producers, Donald Chase and Gerald Isler.[5] Plaintiffs allege that since 2002, when the Farm Bill was first introduced, Defendants have failed to consider the fourth statutory criterion in setting the ALRR. According to Plaintiffs, the "refusal to comply with the Congressional mandate results in the setting of an [ALRR] that is significantly higher than the prevailing market price of peanuts, and prevents domestically produced peanuts from being marketed freely and competitively in the domestic and international markets." (Compl. 2.) Plaintiffs now seek to enjoin Defendants from establishing an ALRR that either "fails to utilize the

---

[5]APSA "is an organization comprised of domestic peanut shellers. Virtually all of the peanuts produced in the United States are marketed for sale by peanut shellers (APSA members market over 80% of peanuts produced in the United States)." (Compl. ¶ 3.)

4

Congressionally mandated factors" or that "exceeds the international and domestic market prices" for peanuts. (Compl. ¶ 22(a)-(b).) Defendants request that the Court dismiss Plaintiffs' Complaint, arguing that Plaintiffs are not entitled to the relief sought. Specifically, Defendants contend that Plaintiffs lack standing and that this matter is committed to agency discretion under 7 U.S.C. § 7991. Since the question of standing raises a challenge to jurisdiction, the Court must address this issue as a threshold matter.

## DISCUSSION

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). Article III standing "enforces the Constitution's case-or-controversy requirement." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004). At a minimum, constitutional standing requires: (1) an "injury in fact" that is "'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical[]'"; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability, or "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) (internal citations omitted); *see also National Ass'n of State Utility Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1250

5

(11th Cir. 2006); *Alabama-Tombigbee Rivers Coalition v. Norton*, 338 F.3d 1244, 1252 (11th Cir. 2003). In the present action, Plaintiffs seek two separate, although related, forms of prospective relief: (1) to enjoin Defendants from setting an ALRR that "fails to utilize the Congressionally mandated factors," and (2) to enjoin Defendants from setting an ALRR that "exceeds the international and domestic market prices" for peanuts. (Compl. ¶ 22(a)-(b).) Since "a plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, __ U.S. __, 126 S. Ct. 1854, 1858 (2006), Plaintiffs must meet the requirements for constitutional standing with respect to each of these claims for prospective relief.

Plaintiffs contend that 7 U.S.C. § 7957(d) provides to peanut producers "a legal right to pay off their marketing assistance loans at a rate that meets the criteria specified in the statute[, and that a]lternatively, they are entitled to receive an LDP, the amount of which is determined by the Secretary's setting of the [ALRR]." (Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss 5.) According to Plaintiffs, "[i]f the repayment rate . . . is set above a price that will permit U.S. peanuts to be 'marketed freely and competitively . . . in international markets,' as required by statute, [P]laintiffs' legal rights are infringed, and [they] have suffered an injury sufficient to confer standing." (Id. (second alteration in original).) Defendants contend that (1) APSA, a sheller's organization, cannot assert an injury under 7 U.S.C. § 7957, a

6

"producer benefit statute[]," and (2) the producer Plaintiffs cannot claim injury where "[n]othing in the law provides for any market share or for the use of a world price[]" in setting the ALRR. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 10.)

The first requirement for Article III standing is that the plaintiff has suffered an injury-in-fact. The plain language of 7 U.S.C. § 7957(d) clearly requires that Defendants set the ALRR based upon consideration of the four enumerated statutory objectives. It is also clear that the loan recipients—the peanut producers—are entitled to repay their loans at an ALRR that takes account of these objectives.[6] Thus, to the extent that Defendants have not considered the fourth statutory criterion in setting the ALRR, they have caused injury to a statutory right of the peanut producers. However, unless the alleged injury is "'actual or imminent, not 'conjectural' or 'hypothetical,'" Plaintiffs have not suffered an injury-in-fact sufficient to establish constitutional standing. *Steel Co.*, 523 U.S. at 103. Put differently, Plaintiffs do not have standing to seek an injunction preventing Defendants "from establishing an [ALRR] that fails to utilize the Congressionally mandated factors" unless there is an "actual" or "imminent" injury to their statutory right. *Id*. Although Plaintiffs' Complaint is sufficient to survive a facial challenge to standing on their first claim for relief, the Court

---

[6]Likewise, any peanut producer who chooses the LDP over a marketing assistance loan is entitled to have Defendants consider the enumerated factors in setting the ALRR.

7

finds that the administrative record clearly indicates that Defendants have considered each of the four statutory criterion in setting the ALRR since 2002. (*See*, *e.g.*, Administrative Record 188, 228, 265-66, 269, 339, 358-60, 364, 3007-47 [hereinafter "R."].) Plaintiffs have failed to identify any evidence that provides factual support for the allegation that Defendants did not consider marketability in setting the ALRR for peanuts.[7] Accordingly, Plaintiffs have failed to establish an "actual" or "imminent" injury to their statutory right, *Steel Co.*, 523 U.S. at 103, and thus lack the requisite Article III standing to assert a claim to enjoin Defendants from setting an ALRR "that fails to utilize the Congressionally mandated factors[.]" (Compl. ¶ 22(a).)

Plaintiffs also seek to enjoin Defendants from setting the ALRR at a rate "that *exceeds* the international or domestic market prices" for peanuts. (Compl. ¶ 22(b).) (Emphasis added.) There is nothing in the language of the Farm Bill that requires Defendants to set the ALRR at *any* specific rate, much less at one that correlates to the market price for peanuts. Plaintiffs incorrectly assume that "a rate" that will "allow peanuts . . . to be marketed freely and competitively" is necessarily the same as "the international and

---

[7]Plaintiffs have pointed to evidence in the administrative record to support their contention that Defendants have not set the ALRR at a rate that coincides with the domestic or international market prices for peanuts. (*See*, *e.g.*, R. 275, 340, 359-60, 364, 371, 3007-47.) However, this evidence does not establish that Defendants have "fail[ed] to *utilize* the Congressionally mandated factors" in setting the ALRR. (Compl. ¶ 22(a).)

8

domestic market prices" for peanuts. *See* 7 U.S.C. § 7957(d)(1)(B)(iv). Additionally, the Farm Bill does not guarantee that every peanut producer who takes advantage of the federal loan program will be able to sell his or her peanuts at the "competitive" market price. Instead, it requires that Defendants consider the marketability of United States peanuts as one of four factors in setting the ALRR. Plaintiffs are not entitled to an ALRR that does not exceed the market price for peanuts, and thus they cannot establish that Defendants' failure to do so caused a "concrete" or "actual" injury-in-fact. *Steel Co.*, 523 U.S. at 103. Consequently, the Court lacks jurisdiction over Plaintiffs' request to enjoin Defendants from setting the ALRR at a rate that "exceeds the international and domestic market prices" for peanuts. (Compl. ¶ 22(b).)

CONCLUSION

Since Plaintiffs have failed to establish that they have suffered any injury-in-fact at the hands of Defendants, the Court finds that Plaintiffs lack Article III standing to pursue the requested relief. Accordingly, this Court does not have subject matter jurisdiction over Plaintiffs' claims, and Defendants' Motion to Dismiss (Doc. 39) is granted.

IT IS SO ORDERED, this 24th day of August, 2007.

                                              S/Clay D. Land
                                                  CLAY D. LAND
                                      UNITED STATES DISTRICT JUDGE